UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL THOMAS<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO COUNTY; SCOTT R. JONES, SHERIFF OF SACRAMENTO COUNTY; SACRAMENTO COUNTY SHERIFF'S DEPUTIES S. DANIELS, FIDLER AND CPL. McKERSEY; SERG KEREZ; ARES MANAGEMENT, LLC; 99 CENTS ONLY STORE, LLC; AND DOES 1-20, INCLUSIVE,<br><br>Defendants. | No. 2:15-cv-01952-TLN-EFB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court on Defendants Sacramento County, Sheriff Jones, and Deputies Daniels, Fidler, and McKersey's (jointly "Defendants") motion to dismiss Plaintiff's complaint.[1]  (ECF No. 16.)  Plaintiff Earl Thomas ("Plaintiff") filed an opposition to Defendants' motion.  (ECF No. 18.)  Defendants filed a reply to Plaintiff's opposition.  (ECF No. 25.)  The Court has carefully considered the briefing filed by both parties.  For the reasons outlined below, Defendants' Motion to Dismiss (ECF No. 16) is hereby GRANTED IN PART and DENIED IN PART.

---

[1] Defendants Kerez, Ares Management, LLC, and 99 Cents Only Store, LLC, (collectively "non-government Defendants") do not join in the current motion.  Therefore, any claims against non-government Defendants are not affected by this order.

1

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is an 87 year old who has lived with post-polio syndrome for over fifty-five years.  (ECF No. 1 ¶ 5.)  As a result, Plaintiff has trouble walking, has precarious balance, and uses a cane or walker.  (ECF No. 1 ¶ 5.)  Defendants Sheriff Scott Jones, Corporal McKersey, and Deputies Fidler and Daniels were employees of the County of Sacramento.  (ECF No. 1 ¶ 11.)  Plaintiff claims that he shopped at his local 99 Cent Only Store ("store") about once a week, and had concerns over the store's compliance with the regulations set forth in the Americans with Disabilities Act ("ADA").  (ECF No. 1 ¶¶ 18–19.)  Plaintiff made comments about this to store manager Defendant Kerez, who seemed aggravated by Plaintiff's investigation and complaints.  (ECF No. 1 ¶¶20–21.)

Plaintiff alleges that on August 1, 2014, Kerez confronted Plaintiff while Plaintiff shopped and measured the store for ADA compliance.  (ECF No. 1 ¶ 22.)  Defendant Kerez stated that he would call the police if Plaintiff did not leave.  (ECF No. 1 ¶ 22.)  Plaintiff did not leave.  (ECF No. 1 ¶ 23.)  Upon returning from the restroom, three deputy sheriffs, Defendants Daniels, Fidler, and McKersey ("deputies") confronted Plaintiff.  (ECF No. 1 ¶ 23.)  Plaintiff alleges that when the deputies asked Plaintiff to accompany them to the front of the store, Plaintiff responded "that he would go with them but that he wanted to get his hotdog buns first."  (ECF No. 1 ¶ 24.)  Plaintiff asserts that one of the deputies then handcuffed him behind his back and forcibly walked him out of the store.  (ECF No. 1 ¶ 24.)  Plaintiff claims that as they were handcuffing him, he told the deputies that he was disabled and at great risk of falling, and requested to walk out without handcuffs on so that he could use his walker.  (ECF No. 1 ¶ 25.)  The deputies denied his request.  (ECF No. 1 ¶ 25.)  Once outside the store, Plaintiff claims the deputies released his handcuffs, and served Plaintiff with a notice of trespass.  (ECF No. 1 ¶ 27.)  Plaintiff asserts that the incident put him at risk of suffering a fall and caused him humiliation as well as pain in his right shoulder and wrist caused by the handcuffs and Defendants' grip on his arm.  (ECF No. 1 ¶ 28.)

Plaintiff filed his Complaint on September 15, 2015.  (ECF No. 1.)  Defendants moved to dismiss Plaintiff's complaint on November 6, 2015.  (ECF No. 16.)  Non-government defendants

2

are not included on that motion and have not independently moved to dismiss the claims against them.

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; see also *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III. ANALYSIS**

Defendants dispute the following claims: Claim One, discrimination in violation of Title II of the ADA; Claim Two, discrimination in violation of the Rehab Act of 1973; Claim Three, retaliation in violation of Title V of the ADA; Claim Five, unlawful arrest and excessive force in violation of the Fourteenth Amendment pursuant to 42 U.S.C §1983; Claim Six, supervisory liability for Fourteenth Amendment violation pursuant to 42 U.S.C §1983; Claim Seven, municipal public entity liability for Fourteenth Amendment violation pursuant to 42 U.S.C §1983; Claim Eight, civil rights violation pursuant to California Civil Code § 52.1; Claim Eleven, discrimination in violation of the California Disabled Persons Act pursuant to California Civil Code § 54; Claim Thirteen, discrimination in violation of California Government Code § 11135. This Court addresses each cause of action in turn.

A. Claim One: Discrimination in violation of Title II of the ADA.

Defendants argue that they did not discriminate against Plaintiff in any way, and that any discrimination was not by reason of Plaintiff's disability. (ECF No. 61-1 at 10–11.) Defendants claim that arrests are not a public entity's service, program or activity, and thus are not covered by the ADA or Rehabilitation Act. (ECF No. 61-1 at 10.) Further, Defendants allege that even if arrests did constitute a public service, the deputies reasonably accommodated Plaintiff's disability in arresting him. (ECF No. 61-1 at 12.) Plaintiff argues that his complaint plausibly alleged the elements of discrimination under the ADA and Rehabilitation Act, and that Defendants did not reasonably accommodate his disability. (ECF No. 25 at 7–11.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  To prove that a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability," (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and (3) such exclusion, denial of benefits or discrimination was by reason of his disability. *See* 42 U.S.C. § 12132; *Weinreich v.*

5

1  *L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

2  The ADA applies broadly to police "services, programs, or activities." 42 U.S.C. § 12132. The Ninth Circuit has interpreted these terms to encompass "anything a public entity does." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on unrelated grounds, City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015) (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)). The ADA encompasses arrests. *Id.* The *Sheehan* court recognized two types of Title II claims stemming from arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees. *Id.*

Plaintiff asserts the second type of Title II claim: that the police failed to reasonably accommodate his disability during his arrest. (ECF No. 25 at 8.) Plaintiff also claims the arrest was wrongful because it was based on activity protected under the ADA: investigating for ADA compliance. (ECF No. 25 at 8.) The Court notes that this claim is substantially similar to Plaintiff's third cause of action for retaliation, and thus will be addressed in Section C below.

The first element of Title II discrimination, proof of qualifying disability, is not in dispute at this stage of the litigation, as Plaintiff has plausibly pled a qualifying disability. (ECF No. 1 ¶ 5.) Defendants argue that both the second and the third elements of Title II discrimination are not met. (ECF No. 16-1 at 10–11.)

On a motion to dismiss, element two of Title II discrimination requires exclusion from participation in or denial of the benefits of a public entity's services, programs, or activities. *See* 42 U.S.C. § 12132; *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). The Ninth Circuit includes arrests as a service, program, or activity of the police, and thus arresting officers must provide reasonable accommodation when arresting people with disabilities. *Sheehan*, 743 F.3d at 1232. Defendants assert that Plaintiff was asking for an

6

optimal accommodation (use of his cane), but instead received a reasonable one (being held up by the officers while handcuffed). (ECF No. 16-1 at 12.) Plaintiff asserts that upon his announcement of his physical disability, the deputies refused to remove handcuffs off an eighty-seven year old man who showed no signs of attempts to flee or cause harm. The Court is not persuaded by Defendants' argument that removal of handcuffs would put the safety of the officers and the public at risk. (ECF No. 16-1 at 12.) Further, Plaintiff has pled that his mobility aid was "necessary," and that "[h]e is very cautious of walking without an assistive device because his balance is precarious and a fall could easily cause him serious injury." (ECF No. 1 ¶¶ 5, 53.) Plaintiff alleges not only harm to his right wrist and arm, but also "humiliation, indignity, discomfort, and fear that [was] in excess of the harms that would be suffered by an able-bodied person." (ECF No. 1 ¶ 35.) The nature of Defendant's contact with Plaintiff is a fact the Court has considered in determining whether the safety of the officers and the public was at risk. Defendants were not responding to reports of a dangerous felon or thief. They were responding to reports that Plaintiff would not leave the store. Plaintiff actually did agree to leave the store but wanted to get his hot dog buns. The officers never responded to the hot dog bun comment or otherwise told Plaintiff that he could not retrieve the buns. There is no indication thereafter that Plaintiff was attempting to flee, belligerent, or assaultive towards the officers such that handcuffs would be necessary for officer safety. In fact, once they were outside the store, Defendants took the handcuffs off Plaintiff's wrists and gave him a notice for trespass. Based on the facts alleged, the Court finds it plausible that supporting Plaintiff while he walked with handcuffs on his wrists was not a reasonable accommodation.

Element three of Title II discrimination requires Plaintiff to plead facts that plausibly indicate that the discrimination was "by reason of his disability." 42 U.S.C. § 12132. Plaintiff's complaint does not allege that the deputies arrested him *because* he was disabled, or that the deputies knew of his investigation into the store's compliance with ADA regulations. To find that a refusal to reasonably accommodate a person with a qualifying disability was "by reason of" the disability, Plaintiff needs to plead that his known disability was a motivating factor in the non-accommodation of his arrest, or that the deputies knew of and were motivated by his investigation

1    with ADA compliance. *See Avila v. City of Visalia*, 2010 WL 4483393, at *3 (E.D. Cal. Nov. 1,
2    2010)

3       Because Plaintiff has failed to allege that the discrimination was by reason of his
4    disability, Defendants' motion to dismiss claim one is GRANTED with leave to amend.

5              B.   Claim Two: Discrimination in violation of the Rehab Act of 1973.

6       Defendants argue that they did not discriminate against Plaintiff in any way, that any
7    discrimination was not by reason of Plaintiff's disability, and that they reasonably accommodated
8    Plaintiff during his arrest. (ECF No. 61-1 at 10–12.) Plaintiff argues that his complaint plausibly
9    alleged the elements of discrimination under the ADA and Rehabilitation Act, and that
10   Defendants did not reasonably accommodate his disability. (ECF No. 25 at 7–11.)

11      The Rehab Act ("RA") uses substantially similar language as the ADA: "no otherwise
12   qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded
13   from the participation in, be denied the benefits of, or be subjected to discrimination under any
14   program or activity receiving Federal financial assistance...." 29 U.S.C. § 794. The Ninth Circuit
15   has analyzed this claim in the same manner as a Title II ADA claim, noting that there is "no
16   significant difference in the analysis of rights and obligations created by the two acts." *Vinson v.*
17   *Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002); *see Zukle v. Regents of Univ. of California*, 166
18   F.3d 1041, 1051 (9th Cir. 1999); *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114
19   F.3d 976, 978 (9th Cir. 1997) ("Title II of the ADA was expressly modeled after Section 504 of
20   the Rehabilitation Act . . . ."); *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) (noting
21   "Congress has directed that the ADA and RA be construed consistently").

22      As noted above, there is no proof that the arrest procedure was influenced "solely by
23   reason of [Plaintiff's] disability." 29 U.S.C. § 794. For the same reasons as above, Defendants'
24   motion to dismiss claim two is GRANTED with leave to amend.

25              C.   Claim Three: Retaliation in violation of Title V of the ADA.

26      Defendants argue that, based on out–of–district rulings that hold individuals cannot be
27   sued under 42 U.S.C. § 12203, the only proper defendant in this claim is the County of
28   Sacramento. (ECF No. 16-1 at 13–15.) Defendant also asserts that Plaintiff failed to plead facts

8

to support a cause of action for retaliation against the County because taking pictures in the store was not a protected activity. (ECF No. 16-1 at 14.) Defendants further argue that, even if taking pictures in the store is a protected activity, Plaintiff does not allege that the deputies knew about Plaintiff's investigation for ADA compliance. Thus, the deputies' actions could not be in retaliation for his actions. Plaintiff argues that defendant misinterprets factual allegations of the complaint, and that he successfully alleged all facts necessary for a claim of retaliation. (ECF No. 25 at 12–13.)

The ADA prohibits retaliation against an individual who has "opposed any act or practice made unlawful" by the ADA or "made a charge, testified, assisted or participated *in any manner* in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a) (emphasis added). "[T]o state a claim for retaliation, a plaintiff must show that he or she acted to protect his or her rights, that an adverse action thereafter was taken against him or her, and that a causal link exists between the two events." *A.P. v. Cmty. Care Licensing*, 2014 WL 5093422, at *4 (E.D. Cal. Oct. 9, 2014) (citing *Smith v. Harrington*, 2013 WL 132465, at *5 (N.D.Cal. Jan. 9, 2013); *see Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004). Temporal proximity between a protected activity and an adverse act may raise an inference of a causal relationship under certain circumstances. *Pardi*, 389 F.3d at 850.

The *Pardi* court discussed the elements of a prima facie case required to survive a motion for summary judgement. *Id.* At this stage, Plaintiff must only state "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697. As the court noted above, Plaintiff has not alleged that the deputies were aware of Plaintiff's alleged protected conduct (investigating the store for compliance with ADA regulations). Nor does Plaintiff allege that the deputies were aware of Plaintiff's investigation. Therefore, it is not possible for Plaintiff's allegations to demonstrate a causal link between Plaintiff's actions at the store and the adverse action against him.[2] Defendants' motion to dismiss claim three is GRANTED with leave to amend.

There appears to be a circuit split on the issue of whether individual defendants can be sued under 42 U.S.C. § 12203, and this Court is not aware of a controlling Ninth Circuit ruling.

---

[2] The Court assumes elements one and two are met without making any determination on the issue.

*Louie v. Carichoff*, 2006 WL 662742, at *4 (E.D. Cal. Mar. 16, 2006) (noting the circuit split and collecting cases). Because this Court is granting Defendants' motion to dismiss on other grounds, this Court declines to determine whether individual defendants can be sued under 42 U.S.C. § 12203.

### D. Claim Five: Unlawful seizure and excessive force in violation of the Fourteenth Amendment pursuant to 42 U.S.C §1983.

As to claim five, Defendants assert that "the Complaint establishes that Plaintiff was simply detained." (ECF No. 16-1 at 17.) Defendants argue that the deputies had the lawful right to detain Plaintiff because he failed to comply with their request to accompany them out of the store. (ECF No. 16-1 at 16–17.) Defendants classify this as resisting, delaying, or obstructing a peace officer in the lawful discharge of their duties. (ECF No. 16-1 at 17.) Defendants also claim that Plaintiff's claim for excessive force is factually insufficient. (ECF No. 16-1 at 17–18.) Defendants assert that any harm to Plaintiff that resulted from the detention was de minimus. (ECF No. 16-1 at 18.) Plaintiff argues that his complaint plausibly alleges that the officers lacked reasonable suspicion and probable cause, and that Plaintiff's request to get buns did not constitute failure to comply with the order of a peace officer. (ECF No. 25 at 14–16.) Further, Plaintiff argues that the facts asserted plausibly state that the deputies' actions were not objectively reasonable, and thus the force used was plausibly excessive in violation of the Fourth Amendment. (ECF No. 25 at 17–18.)

Plaintiff asserts a claim for violations of his Fourth and Fourteenth Amendment rights for unlawful detention and arrest and excessive force under 42 U.S.C § 1983. A § 1983 claim for unlawful arrest and excessive force is properly analyzed under an "objective reasonableness" standard under the Fourth Amendment, rather than the substantive due process standard under the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 387 (1989). Furthermore, a § 1983 claim against an individual requires proving the official, acting personally under color of state law, caused a deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

is legally required to do that causes the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

          i.    *Unlawful seizure*

Police officers are immune from suit if probable cause existed for an arrest. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is satisfied when, at the moment of the seizure, the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. *Beck*, 379 U.S. at 91. While conclusive evidence of guilt is not necessary under this standard to establish probable cause, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (citing *Henry v. United States*, 361 U.S. 98, 101, (1959)). "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted). Since Plaintiff was not arrested, this case does not involve probable cause for an arrest.

"Investigative stops based upon suspicion short of probable cause are ... constitutionally permissible only where the means utilized are the least intrusive reasonably available." *Kraus v. Pierce Cnty.*, 793 F.2d 1105, 1108 (9th Cir. 1986). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, (1983). The Ninth Circuit has held that "while there are no bright-line rules, ... the use of especially intrusive means of effecting a stop" is only allowed in "special circumstances, such as 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur." *Green*, 751 F.3d at

1047 (citing *Washington*, 98 F.3d at 1189) (quotation marks omitted).

Plaintiff asserts that he was peaceably shopping and measuring the store for ADA compliance. (ECF No. 1 ¶¶ 21–22.) Plaintiff does not allege the nature of the information given to police dispatch prior to the officer's arrival. Defendants also do not state what information was given to dispatch, but do state that Defendants were "in the store responding to a complaint of disturbance and to serve a Notice of Trespass." (ECF No. 16-1 at 11.) Plaintiff does not dispute the reasons proffered by Defendants as to why they were in the store. Based upon that information, the deputies were allowed to affect an investigative detention, but were required to use the least intrusive means possible. Based on the facts alleged, it is plausible that there were less intrusive means of conducting their investigative detention short of handcuffing Plaintiff, such as allowing Plaintiff to walk out of the store with the aid of his cane, or responding that he could not get his hotdog buns before exiting the store. Therefore, Defendants' motion to dismiss claim five with respect to unlawful detention is DENIED.

      ii. *Excessive force*

Again, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). However, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396–97. *Graham* sets out factors for evaluating reasonability: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to escape. *Id.* at 396.

Defendants cite various Fifth Circuit precedent, claiming that the harm associated with arrests can be de minimus. (ECF No. 16-1 at 18.) Defendants also cite *Hong Ha v. City of Liberty Lake*, 2010 WL 4065491, at *6 (E.D. Wash. Oct. 15, 2010), noting that "handcuffing is not excessively forceful unless supported by factual allegations detailing specific actions that caused specific injuries in the application of the handcuffs." *Hong Ha* was decided on a motion

1    for summary judgement. *Id.* at *1.

2        In this instance, the factors set out in *Graham* weigh heavily in favor of the Plaintiff. The crime at issue was trespass, a minor infraction that was not serious. As stated above in Section A, it strains the bounds of reason to claim that the 87 year old physically disabled man posed a threat to the officers or the public. Lastly, though he did not comply with the requests of the officers, he did not actively resist them, nor did he attempt to escape. Further, at this stage of litigation there has been no evidence admitted to show the extent of Plaintiff's physical injury as a result of the officers handcuffing and tightly grabbing his arm. (ECF No 1. ¶ 28.) The Court will not, without seeing any evidence, declare Plaintiff's injuries de minimus. Plaintiff's allegations are sufficient to plausibly suggest the injury was not de minimus, and thus are sufficient to plausibly state a claim of excessive force. Defendants' motion to dismiss claim five with respect to excessive force is DENIED.

### E. Claim Six: Supervisory liability for Fourteenth Amendment violation pursuant to 42 U.S.C §1983.

Defendants state that McKersey was not a supervisor at the time of the arrest, and therefore cannot be held liable under a theory of supervisory liability. (ECF No. 16-1 at 20.) Defendant argues that the complaint fails to allege either that Jones personally participated in the alleged violation of Plaintiff's rights or that Jones directed any actions causing the violation or failed to act, being deliberately indifferent to a known widespread abuse. (ECF No. 16-1 at 20.) Plaintiff argues that he successfully pled the supervisory status of McKersey, and Defendants' argument regarding McKersey's supervisory status is not appropriate on a motion to dismiss. (ECF No. 25 at 20–21.) Plaintiff further argues that requisite causal connection for supervisory liability can be established by knowingly refusing to terminate a series of acts by others which the supervisor should have known about. (ECF No. 25 at 19.) Plaintiff claims that he plausibly asserted facts demonstrating a causal connection. (ECF No. 25 at 20.)

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix,*

*Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004)). To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or federal statute proximately caused by the conduct of a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights." *Iqbal*, 556 U.S. at 676–77.

Supervisor liability requires a showing of personal involvement in the constitutional violation or a sufficient causal connection between the supervisor's conduct and the alleged constitutional violation. *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1056–57 (9th Cir. 2013). The causal connection may be established from: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

    i. *Defendant McKersey*

Defendants dispute the fact that McKersey had a supervisory role at the time of Plaintiff's incident. However, Plaintiff has factually alleged that McKersey was a corporal at the time and held a supervisory position over the other two arresting deputies. The Court takes this factual allegation as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Plaintiff has also plausibly alleged that McKersey was one of the three deputies who participated in Plaintiff's arrest. (ECF No. 1 ¶¶ 23–24.) Because McKersey is alleged to have been present, she would have firsthand knowledge of the alleged constitutional violation. At this stage in the litigation, Plaintiff has plausibly alleged McKersey may be liable as a supervisor for her "own culpable . . . inaction in the . . . control of subordinates," as well as "acquiescence in the constitutional deprivation of which a complaint is made." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). For this reason, Defendants' motion to dismiss claim six with respect to McKersey is DENIED.

    ii. *Defendant Jones*

Plaintiff generally concludes that Jones failed to train, discipline, and accurately report facts he observed. (ECF No. 1 ¶ 60.) Plaintiff claims that Jones' failure to do so was a cause in

14

fact of his harm, though he does not explain how or why. (ECF No. 1 ¶ 60.) Lastly, Plaintiff alleges that Jones ratified the illegal actions of the deputies. (ECF No. 1 ¶ 61.) Plaintiff merely states conclusory allegations of a causal connection between the supervisor's conduct and the alleged constitutional violation without specific facts to demonstrate Jones' involvement. Although Plaintiff claims that Jones "ratified the illegal actions of the arresting Deputy Defendants," this language is conclusory. (ECF No. 1 ¶ 61.) Striking these conclusory statements, Plaintiff fails to plausibly allege Jones is liable under a theory of supervisory liability. Defendants' motion to dismiss claim six with respect to Jones is GRANTED with leave to amend.

### F. Claim Seven: Municipal public entity liability for Fourteenth Amendment violation pursuant to 42 U.S.C §1983.

Defendants argue that Plaintiff asserts only conclusory allegations of County policies, practices, and customs, without asserting how the policies, practices and customs caused the injury at issue. (ECF No. 16-1 at 20.) Plaintiff argues that, based on the facts alleged in the complaint, drawing reasonable inferences in the light most favorable to Plaintiff tends to show that the County failed to adequately train officers in use of force and ADA compliance. (ECF No. 25 at 22.) Plaintiff claims this link is bolstered by the facts alleged regarding the deputies' conduct toward Plaintiff during the incident in question. (ECF No. 25 at 22.)

Municipalities, their agencies and their supervisory personnel cannot be held liable under section 1983 on any theory of respondeat superior or vicarious liability. *Monell*, 436 U.S. at 691. They can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *See Monell*, 436 U.S. at 691–693; *Watts v. County of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001); *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986). "To bring a § 1983 claim against a local government entity, a plaintiff must plead that a 'municipality's policy or custom caused a violation of the plaintiff's constitutional rights.'" *Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 992–93 (9th Cir. 2011). "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989). A

plaintiff must show (1) he possessed a constitutional right of which he was deprived, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the "moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury," and the plaintiff must establish "that the injury would have been avoided had proper policies been implemented." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006).

Plaintiff alleges that Sacramento had a host of policies, customs, and practices that all generally relate to a failure to adequately train officers how to interact with disabled persons. (ECF No. 1 ¶ 65.) Plaintiff concludes that these policies are the moving force behind the asserted constitutional violation. (ECF No. 1 ¶ 65.) Plaintiff fails to assert any facts indicating that the County was deliberately indifferent to a pattern of constitutional violations stemming from these policies, and thus fails to satisfy the third element of the test set forth in *Warner*. *Warner*, 451 F.3d at 1070. In fact, Plaintiff's allegations are largely conclusory and fail to indicate deliberate indifference on the part of the County. Therefore, Defendants' motion to dismiss claim seven is GRANTED with leave to amend.

G. Claim Eight: Civil rights violation pursuant California Civil Code § 52.1.

Defendants argue that Plaintiff failed to include any facts supporting his conclusory statement that Defendants used threats, intimidation, and coercion to interfere with his constitutional rights. (ECF No. 16-1 at 22–23.) Plaintiff claims that the coercion in this instance was the deputies handcuffing him, preventing him from his constitutional right to measure for ADA compliance. (ECF No. 25 at 23.)

Section 52.1 provides that "any individual whose exercise or enjoyment of constitutional rights ... has been interfered with" by "threats, intimidation or coercion" may bring a civil action on his or her own behalf. Cal. Civ. Code § 52.1. Plaintiff's state law claims under § 52.1 allege that his Fourth Amendment rights were violated and that those rights were interfered with by threats, intimidation, and coercion. (ECF No. 1 ¶ 70.) Plaintiff additionally asserts that

1   Defendants violated his right to be free from discrimination under the ADA, Rehabilitation Act,
2   §11135 of the California Government Code, and §54 of the California Civil Code. (ECF No. 1 ¶
3   70.)

4   The Ninth Circuit recently clarified whether a plaintiff bringing a Bane Act claim must
5   introduce independent evidence showing threats, intimidation, or coercion. In *Lyall v. City of Los*
6   *Angeles*, the Ninth Circuit found the district court did not err in requiring the plaintiffs to show
7   threats, intimidation, or coercion separate from acts inherent in their detention and search. 807
8   F.3d 1178, 1196 (9th Cir. 2015). Further, the California Courts of Appeal held that to state a
9   claim under § 52.1, plaintiffs must allege that the interference with the plaintiff's rights by means
10  of threats, intimidation, or coercion was "because of" their membership in a protected class.
11  *Boccato v. City of Hermosa Beach*, 29 Cal. App. 4th 1797 (1994).

12  Plaintiff did not allege threats, intimidation, or coercion separate and apart from that
13  which is inherent in a detention. Further, although Plaintiff alleges that the deputies knew of his
14  disability, Plaintiff has not alleged that they either arrested him "because of" that disability, or
15  that they knew of his alleged protected conduct of investigating the store for ADA compliance.
16  For these reasons, Defendants' motion to dismiss claim eight is GRANTED with leave to amend.

17              H. <u>Claim Eleven: Discrimination in Violation of the California Disabled Persons</u>
18                 <u>Act pursuant to California Civil Code § 54.</u>

19  Defendants argue that they did not discriminate against Plaintiff in any way, that any
20  discrimination was not by reason of Plaintiff's disability, and that they reasonably accommodated
21  Plaintiff during his arrest. (ECF No. 61-1 at 10–12.) Plaintiff argues that his complaint plausibly
22  alleged the elements of discrimination under the ADA and Rehabilitation Act, and that
23  Defendants did not reasonably accommodate his disability. (ECF No. 25 at 7–11.)

24  The California Disabled Persons Act ("CDPA") states that "[i]ndividuals with disabilities
25  shall be entitled to full and equal access, as other members of the general public, to
26  accommodations, advantages, facilities . . . [and] places of public accommodation." Cal. Civ.
27  Code § 54.1(a)(1). A violation of the ADA constitutes a violation of the CDPA. Cal. Civ. Code
28  §54(c). Plaintiff and Defendants agree that this claim is analogous to claim one. Thus, both

parties base their arguments on that discussion. This Court agrees that the reasoning in claim one applies to claim eleven as well. Thus, for reasons stated above in Section A, Defendants' motion to dismiss claim eleven is GRANTED with leave to amend.

> I. <u>Claim Thirteen: Discrimination in Violation of California Government Code § 11135.</u>

Again, Defendants argue that they did not discriminate against Plaintiff in any way, that any discrimination was not by reason of Plaintiff's disability, and that they reasonably accommodated Plaintiff during his arrest. (ECF No. 61-1 at 10–12.) Plaintiff argues that his complaint plausibly alleged the elements of discrimination under the ADA and Rehabilitation Act, and that Defendants did not reasonably accommodate his disability. (ECF No. 25 at 7–11.)

Claim thirteen asserts a violation of California Government Code §11135, which is an analogue to the Rehabilitation Act, raised in claim two. *D.K. ex rel. G.M. v. Solano Cty. Office of Educ.*, 667 F. Supp. 2d 1184, 1190–91 (E.D. Cal. 2009) ("Cal. Gov. Code § 11135 is identical to the Rehabilitation Act except the entity must receive State financial assistance rather than Federal financial assistance."). The code provides that, "[n]o person in the State of California shall, on the basis of . . . physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that . . . receives any financial assistance from the State." Cal. Gov. Code § 11135. Based on the reasoning in Section B above, Defendants' motion to dismiss claim thirteen is GRANTED with leave to amend.

**IV.   CONCLUSION**

For the reasons set forth above, the Court hereby orders the following:

1. Defendants' Motion to Dismiss claim one is GRANTED with leave to amend;
2. Defendants' Motion to Dismiss claim two is GRANTED with leave to amend;
3. Defendants' Motion to Dismiss claim three is GRANTED with leave to amend;
4. Defendants' Motion to Dismiss claim five is DENIED;
5. Defendants' Motion to Dismiss claim six is DENIED with respect to Defendant McKersey, and is GRANTED with leave to amend with respect to Defendant Jones;

6. Defendants' Motion to Dismiss claim seven is GRANTED with leave to amend;

7. Defendants' Motion to Dismiss claim eight is GRANTED with leave to amend;

8. Defendants' Motion to Dismiss claim eleven is GRANTED with leave to amend;

9. Defendants' Motion to Dismiss claim thirteen is GRANTED with leave to amend.

Plaintiff shall file his first amended complaint within thirty (30) days of this order.

IT IS SO ORDERED.

Dated: February 9, 2017

Troy L. Nunley
United States District Judge